**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EARL YOUNG, | No. C 09-01042 JSW |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |
| v. | |
| T. HOLMES, et al., | |
| Defendants. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the Motion to Dismiss filed by the Defendants. The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it HEREBY GRANTS, IN PART AND DENIES, IN PART, Defendants' motion.

## BACKGROUND

On March 10, 2009, Plaintiff Earl Young ("Young"), acting *pro se*, filed his original complaint in this action. Young brought claims against T. Holmes, M. Bullock, K. Kiplinger, and T. Buchanan, all of whom are correctional officers at Pelican Bay State Prison. In that Complaint, Young alleged that, on September 24, 2006, the defendants used excessive force against him while he returned to his cell after a shower (the "September 24, 2006 incident"). (*See* Compl., Statement of Facts, ¶¶ 1-6; First Amended Complaint ("FAC"), ¶¶ 22-33.) Young alleges that "other correctional officers ran into the area to assist" Holmes, and he also alleges that "responding staff, including defendant T. Holmes began kicking and beating

[Young] with their hands feet and state issued weapons." (Compl., Statement of Facts, ¶¶ 2, 4; *see also* FAC ¶¶ 22-33.)

Young also alleged that "[c]orrectional staff then placed Plaintiff in Administrative Segregation (Ad-Seg) for the false charges of 'Attempted Murder on a Peace Officer,' which was ordered by Correctional Lieutenant D. Kays." (Compl., Statement of Facts ¶ 9; *see also id.* ¶¶ 10-13 (alleging that Young was ordered to serve a 48 month prison term in solitary confinement on the alleged false charges); FAC ¶¶ 34-39.)

On June 3, 2009, the Court issued an Order of Service permitting the claims of excessive force to go forward against the four defendants. (Docket No. 3.) On March 14, 2011, the Court denied summary judgment. (Docket No. 49.) On July 25, 2011, after the parties failed to resolve their differences at a settlement conference, the Court appointed counsel for Young. (Docket Nos. 53, 60, 62-63.)

On August 31, 2011, Young filed a motion for leave to amend the complaint. The Court granted that motion on October 14, 2011. On October 19, 2011, Young filed his First Amended Complaint ("FAC"), in which he added nine defendants, a claim for relief based on an alleged failure to intervene, a claim for relief based on the deprivation of liberty without due process, and a prayer for punitive damages.

The Court shall address specific additional facts as necessary in the remainder of this Order.

**ANALYSIS**

**A.     Applicable Legal Standards.**

Failure to exhaust administrative remedies under the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA") is an affirmative defense. Thus, the Ninth Circuit has determined that the issue should be "treated as a matter of abatement and brought in an unenumerated Rule 12(b) motion rather than a motion for summary judgment." *Gray v. Salao*, No. 10-3474-WHA, 2011 WL 4024693, at *4 (N.D. Cal. Sept. 9, 2011); *see Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). A defendant bears the burden to raise and prove that a plaintiff failed to exhaust a claim. *Wyatt*, 315 F.3d at 1119. On such a motion,

2

1 the Court may look beyond the pleadings and decide disputed issues of fact. *Id.*, at 1119-20. If
2 the Court concludes that a plaintiff has failed to exhaust his or her claims, the proper remedy is
3 to dismiss without prejudice. *Id.* at 1120.

4 Defendants also move to dismiss under Rule 12(b)(6) for failure to state a claim on the
5 basis that the newly asserted claims and claims asserted against new defendants are barred by
6 the statute of limiations. A motion to dismiss is proper under Federal Rule of Civil Procedure
7 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The
8 complaint is construed in the light most favorable to the non-moving party and all material
9 allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th
10 Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil
11 Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to
12 relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a
13 cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing
14 *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A statute of limitations defense may be raised by
15 a motion to dismiss where the running of the applicable limitations period is apparent on the
16 face of the complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

17 **B.    The Court Shall Not Dismiss the Failure to Intervene Claim.**

18 **1.    Young Exhausted Administrative Remedies.**

19 Defendants argue that Young failed to exhaust administrative remedies on the claim for
20 failure to intervene in the September 24, 2006 incident, because his grievance did not assert that
21 Defendants Buchanan, Bullock, Holmes, Kiplinger, Kingstrom, Northrup, Rogers and
22 Shellabarger failed to intervene or to assist him. The PLRA amended 42 U.S.C. § 1997e to
23 provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. §
24 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional
25 facility until such administrative remedies as are available are exhausted." 42 U.S.C. §
26 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court.
27 *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).
28 "Prisoners must now exhaust all 'available' remedies, not just those that meet federal

3

1 standards." *Id.* Even when the relief sought cannot be granted by the administrative process,
2 *i.e.*, monetary damages, a prisoner must still exhaust administrative remedies. *Id.* at 85-86
3 (citing *Booth*, 532 U.S. at 734).

4 Where a prison's grievance procedures do not specify the level of factual specificity
5 required in the grievance, "'a grievance suffices if it alerts the prison to the nature of the wrong
6 for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 117, 1120 (9th Cir 2009) (quoting
7 *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)); *see also Sapp v. Kimbrell*, 623 F.3d 813,
8 824 (9th Cir 2010). The CDCR's regulations require only that a prisoner "'describe the
9 problem and the action requested.'" *Sapp*, 623 F.3d at 824 (quoting Cal. Code Regs. tit. 15 §
10 3084.2(a)).

11 In his grievance, Young stated that Defendant Holmes used excessive force and stated
12 that, although he obeyed orders given to him, officers continued to beat him. Young also
13 requested that "involved officers be punished." (FAC, Ex. A.) The Ninth Circuit has made
14 clear that "[n]either the PLRA itself nor the California regulations require an inmate to identify
15 responsible parties or otherwise signal who may be sued." *Sapp*, 623 F.3d at 824. Further, a
16 grievance need not include legal terminology or legal theories unless they are needed to provide
17 notice of the harm being grieved. *Griffin*, 557 F.3d at 1120.

18 Defendants have submitted a copy of Pelican Bay's Use of Force Policy dated July 2,
19 2003, which is the policy that was in effect at the time of September 24, 2006 incident.
20 (Declaration of William Barnts ("Barnts Decl."), Ex. A.) That policy provides that "[a]n
21 employee who uses or observes the use of nondeadly force greater than verbal persuasion to
22 overcome resistance or gain compliance with an order shall" notify his or her immediate
23 supervisor and take other actions to notify personnel of the event. (*See id.*, Ex. A at 5-6.) It is
24 clear from Young's grievance that more than one officer was involved, and the Director's Level
25 Appeal Decision and the Executive Review Committee report reflect that fact as well. (*See*
26 FAC, Ex. A; Declaration of William Adams ("Adams Decl."), Ex. C.) Even if those officers
27 did not directly participate in the incident, in light of Pelican Bay's Use of Force Policy, the
28

4

Court finds that Young's allegations would have sufficed to alert the Defendants that some of those officers also may have failed to intervene in the incident.

Accordingly, the Court finds that Defendants have not met their burden to show that Young failed to exhaust the failure to intervene claim, and the Court DENIES, IN PART, the motion to dismiss on this basis.

### 2. The Claim is Not Barred by the Statute of Limitations.

Defendants also argue that the failure to intervene claim is barred by the statute of limitations. Defendants do not dispute that Young's original complaint, in which he alleged a claim for excessive force, was timely. "An amendment to a pleading relates back to the date of the original pleading when: ... the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out - or attempted to be set out - in the original pleading." Fed. R. Civ. 15(c)(1)(B). In addition, an amendment will relate back to the date of the original pleading if:

> the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). In determining whether a new claim relates back to the original pleading, a court should "consider whether the original and amended pleadings share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence or conduct called into question." *Martell v. Trilogy*, 872 F.2d 322, 325 (9th Cir. 1989).

For the reasons set forth above in connection with Defendants' exhaustion argument, the Court finds that the claim for failure to intervene arose out of the same conduct that gives rise to the excessive force claim. As such, that claim relates back to the filing of the original complaint. The Court also concludes that, notwithstanding Defendants' conclusory argument to the contrary, Young has satisfied the requirements of Rule 15(c)(1)(C). (*See, e.g.,* Adams Decl., Ex. C.) Therefore, the Court finds that the allegations against the newly added defendants also relate back to the filing of the original complaint.

5

Accordingly, the Court DENIES, IN PART, Defendants' motion to dismiss on this basis.[1]

### C. The Court Dismisses the Due Process Claim, Without Prejudice, for Failure to Exhaust Administrative Remedies.

Defendants also contend that Young failed to exhaust administrative remedies with respect to his claim that Defendants Bell, Cook, Foss, Horel and Rodgers interfered with his due process rights during the rules-violation hearing that led to Young's placement in the Security Housing Unit ("SHU"). This claim stems from the fact that after the September 24, 2006 incident, Defendants placed Young in the SHU on false charges of attempted murder of a police officer, kept him there for two months, and then ordered him to serve a 48 month term of solitary confinement without giving him the right to call witnesses at his hearing, without assistance to prepare for the hearing, and without a neutral decision maker. (FAC ¶¶ 34-39.)

Young argues that he exhausted this claim twice: first, when he filed his grievance in connection with the September 24, 2006 incident; and again, when he filed grievances in July 2009. Specifically, Young argues that while he pursued his grievance in connection with the September 24, 2006 incident, prison officials pursued charges of Attempted Murder of a Police Officer arising from the same incident. Young's conviction for that offense resulted in his placement in the SHU.

Although Young refers to the fact that he was placed in the SHU and also was told by another officer that things were not over, he does not specifically state that the charges against him were false. (FAC, Ex. A.) Moreover, there is no reference in that grievance to any problem with the procedures used during the rules violation hearing. Thus, the Court concludes that grievance would not have alerted Defendants to the nature of the problem, *i.e.* confinement without due process of law.

On July 8, 2009, Young submitted a group grievance that challenged the enforcement of a memorandum dated August 26, 2002 regarding Indeterminate Security Housing Unit Status

---

[1] Because the Court was not required to reach the tolling argument, Defendants' request for judicial notice is DENIED AS MOOT.

6

1    for Disruptive Inmates. The gist of that grievance was that it constituted double jeopardy to
2    permit indeterminate SHU terms once an inmate had served a determinate term. (*See* FAC, Ex.
3    B.) Although Young makes reference to "double jeopardy" and "due process," and although
4    Young challenged his continued confinement in the SHU and requested that his term be
5    rescinded, he did not refer back to the September 24, 2006 incident and he did not claim that the
6    procedures in connection with his hearing were defective. Rather, he claims that the August 26,
7    2002 memorandum is used selectively to punish African American and Latino inmates. (FAC,
8    Ex. B.) On July 29, 2009, Young submitted another grievance in which he complained about
9    his continued confinement in the SHU on an indeterminate term, having already served a
10   determinate term in that unit, without having been found guilty of any other violations. (Opp.
11   Br., Ex. A.) Again, this document does not refer back to the September 24, 2006 incident, and
12   Young makes no allegations that the rules violation hearing convened in connection with that
13   incident violated his due process rights.

14   As is evident from the FAC, however, Young takes issue with the manner in which
15   Defendants conducted his rules violation hearing. Although, in general, a grievance need not
16   include legal theories or terminology, the Court finds that additional factual information would
17   have been necessary to alert Defendants to the nature of the alleged harm. Accordingly, the
18   Court finds Defendants have met their burden to show Young failed to exhaust the due process
19   claim.

20   Young argues that the Court should excuse the exhaustion requirement, relying on
21   *Nunez v. Duncan*, 591 F.3d 1217 (9th Cir. 2010). In *Nunez*, the court concluded that the
22   plaintiff's failure to exhaust his claims was excused because "he took reasonable and
23   appropriate steps to exhaust his ... claim and was precluded from exhausting, not through his
24   own fault, but by the Warden's mistake." *Id.* at 1224. The mistake at issue was the Warden's
25   mistaken citation to a Program Statement that the plaintiff believed he need to obtain and
26   review before submitting an appeal. *Id.* at 1225. Thus, in *Nunez*, the plaintiff had a reasonable
27   belief that he needed further information to pursue his appeal. Here, however, Young attests
28   only that he had a reasonable belief that he had exhausted his claims, which is no more than a

7

legal conclusion. (*See* Declaration of Earl Young, ¶ 2.) Further, Young does not argue that any of the Defendants obstructed his attempts to exhaust this claim. *See, e.g., id.* (citing *Ngo v. Woodford*, 539 F.3d 1108, 1110 (9th Cir. 2008). Young also does not suggest that the Defendants did not follow the grievance procedures. The Court finds no basis to excuse the exhaustion requirement.

Accordingly, the Court GRANTS, IN PART, Defendants' motion, and it DISMISSES WITHOUT PREJUDICE, Young's third claim for relief against all Defendants against whom it is asserted.

## CONCLUSION

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion to dismiss. The parties shall appear as scheduled for the case management conference on March 2, 2012.

**IT IS SO ORDERED.**

Dated: January 5, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE